ANDREW J. JONES, *alias* PAT KADO, v. THE STATE.

No. 19466. Delivered March 30, 1938.
Rehearing denied May 18, 1938.

The opinion states the case.

*H. H. Shelton,* of Austin, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

MORROW, PRESIDING JUDGE.—Assault with intent to murder is the offense; penalty assessed at confinement in the penitentiary for four years.

Smith Hunter, the alleged injured party, testified that about midnight on March 20, 1937, he was at a place known as "Plummer's Tavern" at which a group of negroes were drinking. He first saw the appellant that night as he (Hunter) walked into the beer joint. Appellant was standing at the bar talking to Hunter's wife. Hunter and his wife had not been living together for several years. The appellant was reprimanded by Hunter for talking to his wife. Theodore Plummer then pushed appellant out of the tavern. Hunter went over to the bar and stood there talking to one Felder. Appellant returned, hit Hunter a hard lick with one hand and cut him in the stomach. Hunter testified that he saw a knife in the hands of the appellant. After he was cut, Hunter grabbed his intestines and walked to a filling station near by from which an ambulance carried him to the hospital. Hunter testified that he had never threatened the appellant at any time.

Doctor C. B. Dildy testified that he attended Smith Hunter the night he was brought to the Breckenridge Hospital as an emergency case. Hunter had a cut over his stomach area and some of his abdominal contents were on the outside of his abdomen. There was a laceration of the stomach about three inches long. The wound went into the abdominal wall and then cut the stomach proper. In the opinion of the doctor, the wound was such that it might have produced death. The wound produced peritonitis and Hunter was confined to the hospital for about a month. He was discharged at the end of that time in very poor condition.

Appellant testified that about ten o'clock at night on March 20, 1937, he went into Plummer's Tavern and bought a bottle of beer for Will Simon; that as he was coming from the back room on his way to the back door, Annie May Hunter engaged in a conversation with him. About that time Smith Hunter appeared and said: "Don't you know that is my wife?" Appellant replied: "No, I don't." Theodore Plummer said to appellant: "Let's go out and· don't argue." Appellant went out followed by Annie May Hunter. Shortly thereafter Smith Hunter came out and said: "I will kill one of these s— of a b——s before God breaks day." Appellant said nothing to Hunter but went into the domino parlor and put a nickel in the player piano. He saw Hunter come into the front door but said nothing to him. Hunter walked over to the bar and bought a bottle of beer. He then looked over the crowd in the building. Upon observing the appellant, Hunter walked over to him and said: "I reckon you understood what I said about that woman." Appellant replied: "That don't mean nothing in the world. Go home and leave me alone. I don't know you and you don't know me." Hunter said: "Yes, I know your name, Kado." Appellant replied: "No, Andrew Jones is my name." Hunter said: "God damn, no. That isn't your name." He then drew back to hit appellant with the beer bottle. Appellant pulled his knife from his coat pocket, cut Hunter one time and then walked out. Appellant testified that he had no intention of killing Hunter; that when Hunter quit threatening him, he did not fight any more but walked away. Appellant admitted on cross-examination that he had been convicted in Oklahoma for murder in 1927 and convicted for burglary in Texas in 1931; that he had served a term in the Texas Penitentiary.

Adolph Green testified that he was working as a bartender at Plummer's Tavern. Smith Hunter was standing at the bar when the appellant slapped him. They then tussled towards the door and went out. The witness did not see a knife in the hands of either the appellant or Hunter.

Annie May Hunter testified that she was the wife of Smith Hunter, the alleged injured party, although they had not lived together for nearly six years. She and the appellant had been friends, but had had some disagreement and ceased going together. She was at Plummer's Tavern on the night on which the altercation occurred between her husband and the appellant. When the appellant appeared at the tavern she spoke to him and they engaged in a conversation. Hunter then appeared and said to appellant: "Nigger, did you know that was my wife you are arguing with?" According to the witness, the appellant made

no reply. She walked out of the building, followed by the appellant and others. Hunter came out of the tavern and walked into the domino parlor next door. He then came out and went back into the tavern, where the appellant had gone in ahead of him. She did not know what next occurred as she was not in the tavern at the time.

The appellant introduced in evidence the written statement of Annie Mae Hunter which she made on the day following the alleged assault. The statement was in substance the same as her testimony adduced upon the trial. In the statement she said that her husband did not threaten, curse or abuse the appellant while she was inside of the tavern; that he did not have a gun, knife, razor, rock or anything in his hands at all. She stated she did not see a knife in the hands of the appellant but knew that he had an East Dallas Special knife in his pocket, because she had seen it a number of times and he had told her that he had it with him all the time.

No complaints of the procedure upon the trial have been presented by bills of exception.

Deeming the evidence sufficient to support the verdict of the jury, and having perceived no error justifying a reversal of the conviction, the judgment of the trial court is affirmed.

## ON MOTION FOR REHEARING.

GRAVES, JUDGE.—Appellant in his motion complains of the fact that the State failed to prove that the knife used in the assault upon prosecuting witness was a deadly weapon.

Mr. BRANCH in his Penal Code, page 934, Section 1587, says:

"The wounds inflicted upon the person assaulted will be looked to in determining whether or not the pistol, knife or other weapon used, was a deadly weapon, and proof that the wounds thereby inflicted were of a serious nature and of the size and weight of the weapon, or either, and of the manner of its use may be sufficient to show that the weapon as used was a deadly weapon," citing numerous cases.

The instrument with which the complaining witness was cut made a laceration about three inches long. It went into the abdominal wall and into the stomach and released the contents of the stomach into the abdominal cavity, and allowed his intestines to protrude. The physician attending the injured party testified that such was a serious wound and might have produced death, the result usually depending on the patient's resistance. It seems to us that the results of the operation of this knife

was sufficient to show its deadly character.

Neither do we think it fundamental error, as urged by appellant, to allow the State to prove by the appellant that he was tried and convicted in Oklahoma in 1927 for murder; he was tried in Travis County, Texas, in 1930 for burglary and sent to the penitentiary; he was tried in Travis County in 1931 for burglary and convicted, and tried in Travis County in 1932 for theft from the person.

In the first place, we do not think the error, if such there was, would be fundamental; in the second place, the general doctrine is when the evidence shows that defendant did not reform, but had a chain of felony convictions against him, he may be impeached as a witness by proof of such convictions. In the Burrell Oates case, 149 S. W. 1194, in a similar matter, the trial court admitted testimony of a homicide nineteen years past, and another twelve years old, qualifying the bill by saying: "There does not appear to have been any very successful efforts at reformation which would make it improper to admit this proof for impeachment." This Court approved such a doctrine. There was no error in such action herein. It is also to be noted that appellant offered no objection to the action of the court relative to the proof of such other offenses.

The motion will be overruled.